**IMPORT MOTORS LIMITED, INC., et al., Appellants,**

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**

**and**

**Engelhard Minerals & Chemicals Corp., Appellees.**

**Customs Appeal No. 76–3.**

United States Court of Customs and Patent Appeals.

Decision Jan. 22, 1976.

Opinion Feb. 3, 1976.

Harvey Kaye, Spencer & Kaye, Washington, D. C., attorney of record, for appellants.

Rex E. Lee, Asst. Atty. Gen., William Kanter, Michael H. Stein, Washington, D. C., attorneys of record, Appellate Section, Civil Division, for appellee Intern. Trade Commission.

David W. Plant, New York City, for appellee Engelhard Minerals & Chemical Corp.

MARKEY, Chief Judge.

To facilitate the proceedings of the Commission, the court hereby announces its decision on this appeal. An opinion will follow in due course.

## DECISION

The appeal is dismissed.

The stay of further proceedings set forth in the Order of this court dated December 3, 1975 (530 F.2d 937 (CCPA 1975)), is vacated.

Before MARKEY, Chief Judge, and RICH, LANE and MILLER, Judges, and ROBERT L. KUNZIG, Judge, United States Court of Claims.

MARKEY, Chief Judge.

This is an appeal from an order of the Presiding Commissioner entered October 17, 1975, in the above-entitled proceeding before the United States International Trade Commission. The full Commission, after review, affirmed the Presiding Commissioner's order on November 18, 1975. In the decision announced January 22, 1976, 530 F.2d 941 (63 CCPA —— (1976)), this court dismissed the present appeal, and vacated the stay of further proceedings set forth in the order of this court dated December 3, 1975, (530 F.2d 937, 63 CCPA —— (1975)). This opinion expresses the reasons for the decision announced January 22, 1976.

### Background

The "Notice of Investigation and Hearing" of the fundamental investigation was published in the Federal Regis-

ter on July 23, 1975 (40 F.R. 30879). The notice recites that a complaint was filed with the United States International Trade Commission (Commission) on May 2, 1975, by Engelhard Minerals and Chemicals Corp. (Engelhard), alleging that the unlicensed importation and sale in the United States of Volkswagen, Audi, and Porsche 914 automobiles containing monolithic catalytic converters, and of replacement monolithic catalytic converters therefor, are unfair methods of competition and unfair acts within the meaning of § 337 of the Tariff Act of 1930, as amended by the Trade Act of 1974, 88 Stat. 2053, 19 U.S.C. § 1337,[1] by reason of the coverage of such monolithic catalytic converters by claims 1–4 in U. S. Patent No. 3,441,381 and claims 1, 2, 5, 6, 13, and 14 in U. S. Patent No. 3,565,830.[2] The notice named numerous entities as respondents,[3] including the manufacturer, Volkswagenwerk A.G. (VWAG), the importer, Volkswagen of America, Inc. (VWoA), and the four appellants, Import Motors Ltd., Inc., World-Wide Volkswagen Corp., Riviera Motors, Inc., and Porsche Audi Northwest, Inc. Each appellant is a corporate entity independent and separate from the others and from VWAG and VWoA. Thus, each appellant is an independent distributor, and a major portion of each appellant's business is the purchase of Volkswagen, Audi, and Porsche 914 automobiles from VWoA and sale of such automobiles to retail dealers in the territory of the distributorship.

The notice also recites that "failure of a party to file a response to each of the allegations which are the subject of this investigation as set forth in this notice * * * may be deemed to constitute a waiver of its right to appear and contest such allegations and shall authorize the Commission, without further notice to that party, to find the facts to be as alleged and to enter an order containing such findings."

Each appellant then filed a response with the Commission.

Another independent distributor not involved in this appeal, Volkswagen Mid-America, Inc., one of the respondents in the notice, filed with the Commission a motion "to withdraw as a party" to the investigation. On October 17, 1975, the Presiding Commissioner entered an order granting the motion filed by Volkswagen Mid-America, Inc., and further ordering that all independent distributors be "discontinued as parties to this proceeding under Section 337(a) without prejudice to the aforesaid independent distributors to intervene at a later stage of this proceeding in the event a violation of Section 337(a) has been established as persons interested in the Commission's determination under Section 337(d), (e) and (f)." On October 21, 1975, the Presiding

1. Section 337(a) of the Tariff Act of 1930, as amended by the Trade Act of 1974, 88 Stat. 2053, 19 U.S.C. § 1337(a), provides:

   (a) Unfair Methods of Competition Declared Unlawful.—Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to exist shall be dealt with, in addition to any other provisions of law, as provided in this section.

2. Engelhard's complaint also states that Volkswagen of America, Inc. has sought a declaratory judgment that both Engelhard patents are invalid and not infringed in a complaint previously filed in the United States District Court for the Southern District of New York (*Volkswagen of America, Inc. v. Engelhard Minerals and Chemicals Corp.*, 401 F.Supp. 1210). The Commission has denied a motion to suspend the present investigation, a motion based on the New York court action and citing § 337(b)(1), as amended.

3. At oral hearing, counsel for the Commission indicated that the entities named as respondents in the notice were so named because of Engelhard's complaint and that the Commission has no requirement that a complainant establish that the respondents named in a complaint have an interest sufficient to require participation.

Commissioner issued an opinion explaining the reasons underlying the order of October 17, 1975. The full Commission then reviewed the Presiding Commissioner's order. In the Commission's order of November 18, 1975 (issued in written form on December 3, 1975), the Commission "concurred with the reasons set forth" in the Presiding Commissioner's opinion of October 21, 1975, incorporated the Presiding Commissioner's opinion in the Commission's order, and stated two additional reasons for discontinuing appellants "as parties to this proceeding without prejudice to the right of the aforesaid independent distributors [including appellants] to intervene at a later stage of this proceeding." (The Commission's order, and the Presiding Commissioner's opinion incorporated therein, appear as an Appendix herewith).

Appellants seek review of this action by the Presiding Commissioner, affirmed by the full Commission, discontinuing them as parties to the initial stage of the investigation but without prejudice to their right to intervene at a later stage.

### Appellants' Contentions

Appellants, appealing as a unit represented by the same counsel, have basically three contentions: (1) that the Commission's order denying them participation in the initial stage of the investigation is "appealable now," i. e., that it is a "final determination" ripe for judicial review; (2) that they have an "unequivocal" right to such participation; and (3) that they have, at least, a conditional right to such participation (on this point, appellants urge that the Commission's order was an abuse of its discretion).

Appellants premise contention (1) on the "final determination" sentence in § 337(c) of the Tariff Act of 1930, as amended by the Trade Act of 1974, 88 Stat. 2054, 19 U.S.C. § 1337(c).[4] "Any person adversely affected by a final determination of the Commission under subsection (d)[5] or (e)[6] may appeal such

---

4. The full text of § 337(c), as amended, 19 U.S.C. § 1337(c), is:

   (c) Determinations; Review.—The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section. Each determination under subsection (d) or (e) shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of title 5 [United States Code]. All legal and equitable defenses may be presented in all cases. Any person adversely affected by a final determination of the Commission under subsection (d) or (e) may appeal such determination to the United States Court of Customs and Patent Appeals. Such court shall have jurisdiction to review such determination in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the United States Customs Court.

5. Section 337(d), as amended, 19 U.S.C. § 1337(d), provides:

   (d) Exclusion of Articles From Entry.—If the Commission determines, as a result of an investigation under this section, that there is violation of this section, it shall direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or indirectly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry.

6. Section 337(e), as amended, 19 U.S.C. § 1337(e), provides:

   (e) Exclusion of Articles From Entry During Investigation Except Under Bond.—If, during the course of an investigation under this section, the Commission determines that there is reason to believe that there is a violation of this section, it may direct that the articles concerned, imported by any person with respect to whom there is reason to believe that such person is violating this section, be excluded from entry into the United States, unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry. The Commission shall notify the Secretary of the Treasury of its action under this subsection directing such exclusion from entry, and upon receipt of such notice, the Secretary shall, through the proper

determination to the United States Court of Customs and Patent Appeals." At oral hearing (held January 16, 1976), counsel for appellants made it clear that contention (1) is based solely on the quoted "final determination" sentence of § 337(c), as amended, and *not* on any provision of the Administrative Procedure Act (now subchapter II of chapter 5 and chapter 7 of title 5, U.S.C.).

Appellants premise contentions (2) and (3) on the following sentence in § 337(c), as amended: "Each determination under subsection (d) or (e) shall be made on the record after notice and opportunity for a hearing in conformity with the provisions of subchapter II of chapter 5 of title 5 [United States Code] [5 USC 551–59, a portion of what was originally the act popularly known as the "Administrative Procedure Act"]."

### Commission's Contentions

Appellee United States International Trade Commission contends: (1) that its order discontinuing appellants in the initial stage of the investigation is not a "final determination" within the meaning of § 337(c), as amended, and that therefore, it is not presently appealable to this court; (2) that appellants do not have an unconditional right to such participation; and (3) that if appellants have a conditional right to such participation, nevertheless the Commission did not abuse its discretion because appel-

lants' economic interests are adequately represented in the initial stage by the importer, VWoA, and the manufacturer, VWAG. (The Commission concedes that appellants, as independent distributors, have alleged sufficient economic interest to entitle them to participate *if* such interest were not otherwise represented.)

### Engelhard's Contentions

Appellee Engelhard Minerals and Chemicals Corp. essentially agrees with the position taken by the Commission below and on appeal.[7]

### OPINION

The dispositive issue is whether the Commission's order is ripe for judicial review under the new statute.[8] Our first consideration is whether the order is intrinsically a "final determination" under § 337(c), as amended, and, if it is not, whether its effect upon appellants is the equivalent of a final determination. We find the Commission's order neither a "final determination" nor an equivalent thereof in its effect upon appellants.

■ The Commission's order is not intrinsically a "final determination of the Commission under subsection (d) or (e)." Strictly interpreted, that phrase refers to a final administrative decision on the merits, excluding or refusing to exclude articles from entry under subsection (d) or (e).[9]

---

officers, refuse such entry, except that such articles shall be entitled to entry under bond determined by the Commission and prescribed by the Secretary.

7. This position is, of course, contrary to that taken by Engelhard in the original complaint filed with the Commission, wherein appellants were named as respondents. Engelhard explains this change in position by quoting the following portion of the Presiding Commissioner's October 21, 1975 opinion:

At the time of instituting this investigation it appeared uncertain as to the relation of distributors to imports and they were accordingly included as parties. It is now undisputed that Volkswagenwerk Aktiengesellschaft (hereinafter referred to as "VWAG") is the sole manufacturer of the Volkswagen automobiles in which the subject articles are incorporated. Further, Volkswagen of America, Inc. ("VWoA") is

"the sole United States importer of automobiles and parts produced by VWAG."

8. In need of legislative updating is 28 U.S.C. § 1543:

§ 1543. Tariff Commission decisions.
The Court of Customs and Patent Appeals shall have jurisdiction to review, by appeal on questions of law only, the findings of the United States Tariff Commission as to unfair practices in import trade, made under section 1337 of Title 19.

9. Section 337(f) provides for cease and desist orders. Section 337(c) speaks of appeal only of determinations under subsection (d) or (e). Packaged treatment elsewhere in the statute of subsections (d), (e), and (f) would indicate that failure to include subsection (f) in subsection (c) was a result of legislative inadvertence and that final decisions under subsection (f) would be appealable in the same manner as those under subsections (d) and (e).

■ Moreover, the legislative history as evidenced by the Senate Committee on Finance report (*Report on Trade Reform Act of 1974*, S. Rep. No. 93–1298, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News, p. 7186) indicates that a final decision of the Commission on the merits in favor of a complainant under subsection (d), (e), or (f) is not an appealable "final determination" until the Commission's decision has been referred to the President under § 337(g), as amended,[10] and approved or not disapproved within the statutory 60-day period. The Senate Committee report, at 196–97, U.S.Code Cong. & Admin.News 1974, p. 7329, states:

> Further, under section 337(c), as amended, the Committee would extend the right to judicial review of final Commission determinations (of whether there is a violation of section 337 or whether there is reason to believe there is a violation) to complainants before the Commission as well as continuing to permit owners, importers, and consignees of the articles involved in such determinations to secure such review. By final determination, as used in this section, the Committee means a Commission determination which has been referred to the Presi-

dent under amended section (g) of section 337, and has been approved by the President or has not been disapproved for policy reasons by the President within the 60 day period after referral of the determination. The judicial review provided is in the Court of Customs and Patent Appeals, in the same manner and subject to the same limitations and conditions as in the case of appeals from decisions of the U.S. Customs Court.

■ A final decision of the Commission unfavorable to a complainant under subsection (d), (e), or (f) would be a directly appealable "final determination," such a decision not being referrable to the President under § 337(g). The first sentence of the above-quoted paragraph in the Senate Committee report, and the provisions in § 337(c) for appeal by "[a]ny person adversely affected," under conditions identical to "appeals from decisions of the United States Customs Court," indicate an intent to provide appeal of such an unfavorable decision directly to this court.

■ An order of the Commission terminating participation in a preliminary proceeding, or terminating participation in all proceedings, could have the same operative *effect*, in terms of economic

---

10. Section 337(g), as amended, 19 U.S.C. § 1337(g), provides:

(g) Referral to the President.—(1) If the Commission determines that there is a violation of this section, or that, for purposes of subsection (e), there is reason to believe that there is such a violation, it shall—

(A) publish such determination in the Federal Register, and

(B) transmit to the President a copy of such determination and the action taken under subsection (d), (e), or (f) of this section, with respect thereto, together with the record upon which such determination is based.

(2) If, before the close of the 60-day period beginning on the day after the day on which he receives a copy of such determination, the President, for policy reasons, disapproves such determination and notifies the Commission of his disapproval, then, effective on the date of such notice, such determination and the action taken under subsection (d), (e), or (f) of this section, with respect thereto shall have no force or effect.

(3) Subject to the provisions of paragraph (2), such determination shall, except for purposes of subsection (c) of this section, be effective upon publication thereof in the Federal Register, and the action taken under subsection (d), (e), or (f) of this section with respect thereto shall be effective as provided in such subsections, except that articles directed to be excluded from entry under subsection (d) of this section or subject to a cease and desist order under subsection (f) of this section shall be entitled to entry under bond determined by the Commission and prescribed by the Secretary until such determination becomes final.

(4) If the President does not disapprove such determination within such 60-day period, or if he notifies the Commission before the close of such period that he approves such determination, then, for purposes of paragraph (3) and subsection (c) of this section such determination shall become final on the day after the close of such period or the day on which the President notifies the Commission of his approval, as the case may be.

impact upon those terminated, as a final determination under subsections (d) and (e). Substance, not form, must control. Cf. *In re Haas*, 486 F.2d 1053, 1055, 179 USPQ 623, 625 (Cust. & Pat.App.1973). The Commission implicitly found that the economic interests of appellants would be adequately and sufficiently represented, in the first stage[11] of the investigation, by the importer, VWoA, and the manufacturer, VWAG. Appellants argue that their interests differ from VWoA because "VWoA could, insofar as its distributing functions are concerned, operate in a manner which does not make a profit * * *." Whatever the merits of appellants' argument are, the Commission's order did not terminate appellants' participation in the entire investigation. Appellants stated to the Commission and at oral argument here that they did not intend to take an active role concerning the unfair competition (patent infringement) issue in the first stage, and they conceded that the remaining respondents are in "as good" a position as they to defend against Engelhard's claim of economic injury in the first stage.

Appellants have been denied participation only in the first stage.[12] The second stage of the present investigation, when and if conducted, will consider the "public interest" factors specified in subsections (d), (e), and (f). The Commission concedes that appellants have a right to intervene and participate fully in the second stage when and if the Commis-

---

**11.** The Commission, to expedite the performance of its functions (see § 603(a) of the Trade Act of 1974, 88 Stat. 2073, 19 U.S.C. § 2482(a)), decided to conduct the present investigation in two distinct stages. In the first stage, the burden is on complainant Engelhard to prove a violation of § 337(a), as amended, to wit: (1) the existence of "[u]nfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either," and (2) "the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States * * *." In the second stage, the Commission must consider the public interest as specified in subsections (d), (e), and (f): "the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." The Senate Committee Report, supra at 195, U.S.Code Cong. & Admin.News 1974, p. 7328, states: "[w]hile the Committee would *require* the Commission to seek advice and information from certain agencies and Departments, it is anticipated that the Commission *will permit* any party with relevant information to present such information to the Commission during the course of an investigation." (Emphasis added.)

**12.** The Commission is operating with a new statute containing a one year (18 months in complicated cases) maximum time limit on its investigations. The Commission must investigate every alleged violation. Unnecessary and duplicative participants in the first stage could greatly delay the Commission's performance of its duties and risk or preclude its ability to complete an investigation within the legislatively mandated time limit. Section 337(b)(1), as amended, 19 U.S.C. § 1337(b)(1), provides:

> (b) Investigations of Violations by Commission; Time Limits.—(1) The Commission shall investigate any alleged violation of this section on complaint under oath or upon its initiative. Upon commencing any such investigation, the Commission shall publish notice thereof in the Federal Register. The Commission shall conclude any such investigation, and make its determination under this section, at the earliest practicable time, but not later than one year (18 months in more complicated cases) after the date of publication of notice of such investigation. The Commission shall publish in the Federal Register its reasons for designating any investigation as a more complicated investigation. For purposes of the one-year and 18-month periods prescribed by this subsection, there shall be excluded any period of time during which such investigation is suspended because of proceedings in a court or agency of the United States involving similar questions concerning the subject matter of such investigation.

The International Trade Commission appears to be one of the few administrative agencies, if not the only administrative agency, which must conclude its investigation and make its determination within a specified time. That statutory limit could encourage intervention and dilatory, duplicative tactics by those who may be interested in increasing the burden on the Commission and thereby preventing its reaching a timely determination.

sion investigation reaches that point.[13] On this record, appellants have not shown that the order terminating their participation in the first stage has the operative effect of a "final determination under subsection (d) or (e)," giving appellants the right to appeal therefrom under 337(c), as amended. For that reason, we do not reach appellants' contentions (2) and (3), supra, neither of which are directed to the nature or effect of the Commission's order as a "final determination."

### Conclusion

We conclude, therefore, that there has been neither an express "final determination of the Commission under subsection (d) or (e)," within the meaning of § 337(c) or an action with respect to the appellants which has the effect of such a final determination. Under those circumstances, appellants have no present right of appeal to this court.

As announced heretofore, the appeal is *dismissed.*

### APPENDIX

### UNITED STATES INTERNATIONAL TRADE COMMISSION

Washington, D.C.

[337–TA–18]

### MONOLITHIC CATALYTIC CONVERTERS

### Order

The United States International Trade Commission in a notice published in the *Federal Register* on October 31, 1975 (40 F.R. 50752) in the Monolithic Catalytic Converters Investigation No. 337–TA–18 ordered full Commission review of the order of Presiding Commissioner Ablondi dated October 17, 1975, which granted

the application of Volkswagen Mid-America, Inc., to withdraw as a party, and discontinued Midvo, Inc., World-Wide Volkswagen Corp., Volkswagen Atlantic, Inc., Import Motors Limited, Inc., Riviera Motors, Inc., and Porsche Audi Northwest, Inc., as parties without prejudice to their intervening at a later stage of this proceeding.

Volkswagen Mid-America, Inc., Midvo, Inc., World-Wide Volkswagen Corp., Volkswagen Atlantic, Inc., Import Motors Limited, Inc., Riviera Motors, Inc. and Porsche Audi Northwest, Inc., which are independent distributors of imported automobiles incorporating monolithic catalytic converters, purchase the units from the importer Volkswagen of America, Inc.

Upon consideration of written and oral submissions and the legal arguments of counsel at the public hearing on November 6, 1975, the Commission concurred with the reasons set forth in Presiding Commissioner Ablondi's opinion dated October 21, 1975 (a copy of which is annexed hereto and made a part of this order), and, for the additional reasons that (1) the aforementioned distributors have made no showing that they can assist the Commission at this stage of the proceeding under section 337(a) and (2) the inclusion of the aforesaid distributors would only burden and delay this complicated proceeding, the Commission on November 18, 1975—

ORDERED that the application of Volkswagen Mid-America, Inc., to withdraw as a party to this proceeding is granted; and

FURTHER ORDERED that Midvo, Inc., World-Wide Volkswagen Corp., Volkswagen Atlantic, Inc., Import Motors Limited, Inc., Riviera Motors, Inc., and Porsche Audi Northwest, Inc., are discontinued as parties to this proceeding

---

**13.** Counsel for the Commission stated at oral hearing:

[W]e would like to make it clear that the appellants are not being terminated as parties for purposes of the entire proceedings.

They are being terminated as parties for a limited phase of the proceedings and that is the initial determination that there is a violation, an unfair trade practice.

without prejudice to the right of the aforesaid independent distributors to intervene at a later stage of this proceeding.

By order of the Commission:

(s) Kenneth R. Mason
KENNETH R. MASON
Secretary

Attachment
Issued: December 3, 1975

BEFORE THE
UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C. 20436

In the matter of:

MONOLITHIC CATALYTIC CONVERTERS

Docket No. 337–TA–18

## OPINION

An application has been made by Volkswagen Mid-America, Inc. (hereinafter referred to as "Mid-America") to remove Mid-America as a respondent and a party to this proceeding. It is contended that Mid-America is not covered by the statutory provisions of Section 337(a) of the Tariff Act of 1930, as amended (88 Stat. 2053). Counsel for Mid-America, who also represents remaining independent distributors in its submission states, as follows:

The statute conferring jurisdiction *—refers to "importation" of articles. Mid-America is not importing; rather, Volkswagen of America, Inc. (hereinafter "VWoA") is the importer. The statute also refers to "or in their sale by the owner, importer, consignee or agent of either". It is believed by Mid-America that a mere sale alone is not contemplated by the statute, but the sale must be one which is connected with the importation. Under this interpretation, Mid-America is not covered by the statutory jurisdictional basis for the investigation and should be removed as a party.

At the time of instituting this investigation it appeared uncertain as to the relation of distributors to imports and they were accordingly included as parties. It is now undisputed that Volks-

wagenwerk Aktiengesellschaft (hereinafter referred to as "VWAG") is the sole manufacturer of the Volkswagen automobiles in which the subject articles are incorporated. Further, Volkswagen of America, Inc. ("VWoA") is "the sole United States importer of automobiles and parts produced by VWAG." Further, VWoA admits that the distributors "are independent, completely independent. There is no agency relationship in law. They purchase automobiles and they distribute them."

Under section 337(b), Congress has authorized the Commission to conduct an investigation for the express purpose of determining whether a violation of section 337 exists. A violation is defined in section 337(a):

*Unfair Methods of Competition Declared Unlawful.*—Unfair methods of competition and unfair acts in the importation of articles into the United States, or in their sale by the owner, importer, consignee, or agent of either, the effect or tendency of which is to destroy or substantially injure an industry, efficiently and economically operated, in the United States, or to prevent the establishment of such an industry, or to restrain or monopolize trade and commerce in the United States, are declared unlawful, and when found by the Commission to ex-

* 19 U.S.C. 1337(a)

ist shall be dealt with, in addition to any other provisions of law, as provided in this section.

Congress has placed upon the Commission a time limitation of twelve (12) months in which to complete its determination, and, in certain complicated proceedings, extended the time limit to eighteen (18) months.

It is clear that in order to adhere to the strict time limitations placed upon the Commission, and in light of the nature of the proceeding, that only those necessary parties, who may be directly affected by Commission action under Section 337(a), should have the opportunity of full participation as parties under Section 337(a). To compound an already complex proceeding with unnecessary parties may very well act as a restraint upon the Commission's ability to complete its determination within the time constraints placed thereon by law.

There is also involved the exchange of highly confidential business, marketing and manufacturing data which militates against a wide dissemination to any interested person unless a direct interest can be ascertained. The Commission, in addition, should have a wide latitude in conducting and managing its investigations to accomplish its legislative mandate.

It appears that participation by the independent distributors is not necessary to develop the facts in this investigation pursuant to Section 337(a). Furthermore, no showing is made by the independent distributors that they can contribute and assist the Commission to fulfill its responsibilities under Section 337(a). The independent distributors are, however, naturally interested and concerned in the outcome thereof, as are all the persons who use the article in question. It is contemplated that such interested persons can contribute to the Commission determination under Section 337(d), (e) and (f) by submission or presentation of views when a violation has been established under 337(a).

I accordingly grant the application of Mid-America, which is one of approximately 1,700 independent distributors of Volkswagen autos and products, to withdraw from the proceeding. The legal argument made by counsel for Mid-America likewise applies to Midvo, Inc., Import Motors Ltd., Inc., Volkswagen Atlantic, Inc., World-Wide Volkswagen Corporation, Riviera Motors, Inc. and Porsche Audi Northwest, Inc. who are independent distributors. They should not be parties to the Commission deliberations under 337(a) for the reasons above set forth. This decision, however, is without prejudice to the aforesaid independent distributors and others to appear as interested persons in connection with any action the Commission may take with regard to section 337(d), (e) and (f).

It is the intention in conducting this investigation to first hear all of the issues concerning Section 337(a) and in the event that there is a violation of 337(a), to then address the issues insofar as Section 337(d), (e) and (f) are concerned and expect the advice and opinion of all interested persons.

(s)Italo H. Ablondi
Presiding Commissioner

Dated _____ October 21, 1975. _____